Tucker, P.
These cases are certainly not 'WKhout embarrassment, arising from the plaintiff’s asserting and prosecuting the same claim in two different forms, from a doubt as to which was most proper.
In the first place he instituted a suit against a curator pendente lite, recovered judgment on the day when administration was granted, and issued a scire facias to revive the judgment against the administrators. On this scire facias judgment was rendered for the plaintiff, to which judgment the administrators obtained a superse *266 deas ; and the first case thus turns on the” question whether an appointee under the 24th section of the statute 0f wills, 1 Rev. Code, ch. 104. p. 3S0. is liable to be sued for the debts due from the decedent. I am of opinion that he is not.
England, the power to grant administration is in the ordinary, and the obligation to appoint an administrator was imposed by the statute 31 Ed. 3. ch. 11. p[]US ¡t would seem that the subject of administrations was principally regulated by statute; and moreover, that so much of it as depended upon the common law was intimately connected with the ecclesiastical state. Hence it early became the object of legislation in Virginia, and a system was built up, conforming a good deal in its general outline with that of England, and referring so obviously to it, that.the principles of the english adjudications have in this, as in most other branches of our jurisprudence, been our principal guide. It is obvious, however, that to our statute book we must mainly look for the law of the subject.
After having provided for the probat of wills and granting letters testamentary, our statutes proceed to the subject of administration, and ordain that the courts having jurisdiction shall grant administration to the representatives of the decedents who shall apply for the same, and if no person applies, then to any creditor. Provision is also made for the case of the executor’s refusal, by the appointment of an administrator cum testar mentó annexo. Still there were the cases of special and limited administrations, for which there seems to have been no specific provision until the act of 1785. Not that such specific provision was necessary ; since the general power, having reference to the system of jurisprudence on which our own is founded, may fairly be interpreted to comprehend a power to appoint all such administrators as could be appointed under the english law. Nevertheless the act of 1785, ch. 61. % 20. 12 Hen. Stat. *267 at large, p. 144. amended at the revisal of 1792, did provide for the appointment of a person to collect and preserve the estate of a decedent, during infancy of the executor, or until a suppressed will should be established ; and by the act of 1789, ch. 13. § 6. 13 Hen. Stat. at large, p. 12. the general court and district courts were authorized “ to grant letters of administration during the infancy or absence of an executor, or ad colligendum bona defined, or pendente lite, or until a will which may have once existed, but is destroyed, shall be established.” In the revisal of 1792, these provisions were amalgamated into one section, which forms the 24th section of our present statute of wills. It is observable that the language of the act of 1789 corresponds very closely with the authorities in the english law. From them we learn that the ordinary, in default of persons entitled to the administration, may appoint a person ad colligendum bona defined, who has power to collect and preserve the goods of the intestate, but cannot sell the effects; and being thus without the means of providing for payment of debts, I take it, was not liable to the action of the creditor. Toller 106. 107. 11 Viner’s Abr. 87. In like manner the act provides for such administrations, and in the succeeding section enacts that the bond and oath may be changed in such manner as to the courts may seem necessary.
It would seem indeed that by the english law these special administrators were not in all cases confined to the mere collection and preservation of the goods, but were most frequently appointed with full powers to act as administrators while their commissions lasted. But on the other hand it is equally clear that this was not always the case, but that where the ordinary could not immediately grant administration, he was in the habit of appointing a curator for the mere preservation of the estate, without capacity to be sued, or power to sell the estate for payment of debts. It is obvious that conve *268 nience requires that this expansion and limitation of authority should both be in the power of the court. For a curator, with his narrow powers, would be ill suited to the case of an infant executor with prospect °f a l°ng minority; while on the other hand the appointment of an administrator with full powers durante minori estate, or durante absentia, or pendente lite, when a few months were likely to terminate his powers, would be both inconvenient and unjust. It would take from the executor those emoluments which flow from the administration, and moreover give to the temporary administrator the power to retain, even to the prejudice of the executor himself. The law, therefore, wisely makes provision for these various emergencies. The ordinary, if there is a prospect of a long minority or absence, or a tedious litigation, may in his discretion grant administration either with full powers or in a restrictive form, Toller 403. 404. 405. and sometimes, as we have seen, may appoint a curator, whose authority is strictly limited to the collection and preservation of the estate. Id. 107. And so by our law (statute of 1789, ch. 13. § 5. before referred to) the court has power to grant administration during the infancy or absence of an executor, or ad colligendum bona, or pendente lite. Now, the first and last may be with full powers; but from its very nature, the administration ad colligendum bona defuncti must be limited in its character. And this variety in the powers of the appointees or special administrators will account for the provision in the 6th section of the same statute (which now forms the 25th section of the act in the revisal of 1819) that “the bond and oath in such cases shall be changed from the bond and oath in ordinary cases, as to the courts shall seem necessary.” Thus where there is a special administration with full powers, the bond and oath would be to administer the goods Sfc. according to law, which of course implies the payment of debts, and the consequent liability to suit. *269 But where the curator is appointed merely to collect and preserve the estate, his bond and oath are varied accordingly, and bind him only to the collection and ° ^ . . preservation of the estate, and its delivery over to the executor or administrator when required. Such a bond would aflord no security to the creditor, if it were even conceded that he could sue the curator. In an action upon it, it never could be laid as a breach of the bond to collect and preserve the estate, that he had not paid the demand of the creditor. The bond in this case is probably of this character (though it does not appear in the record). If so, it is not perceived how an action could be maintained upon it for failure to pay off the amount of the judgment; and it is not to be supposed that the act of assembly designed to give a remedy against one whose official bond would not cover his devastavit in relation to the creditors.
The objection has been made that if a curator be appointed who is incapable, of being sued, great injustice is done both to the estate and to the creditors; the latter being delayed in the recovery of their debts, and the former being consumed by interest. These are considerations, indeed, which must have much weight with the court of probat as to the proper course to be pursued, but do not affect the construction of the act. There may be much reason for the appointment of a special administrator instead of a curator, where the grant of letters testamentary or of administration in chief is likely to be long delayed; but where it will probably be but temporary, all that is necessary is a curator to collect and preserve the estate, so as to have it ready for delivery over to the proper representative.
It remains but to say that the provisions of the 42nd section of the statute of wills apply alone to the curators mentioned in the preceding section, who being substituted for a defaulting and removed executor or administrator, are very properly invested with all their powers and capacities.
*270 Upon the whole, I am of opinion to reverse the judgment upon the scire facias, and enter judgment for the defendants.
Then, as to the action of debt brought by Thornton executor of W. Wynn against Powell and wife as administrators of John Wynn, I am of opinion that the judgment should have been given for the plaintiff. Having just come to the conclusion that an action cannot be maintained against a curator appointed under the 24th section of the statute of wills, and that a judgment in such action is void, and cannot legally be made available against the decedent’s estate; if that conclusion be correct, it follows that the plea of a former recovery against the curator, which was in no wise obligatory upon the estate, cannot offer a bar to an action against the regular administratrix, upon the original contract. Although it was unreversed and unannulled, and although a court cannot reverse-its own judgments when they are collaterally brought before it, yet, quoad the ■assets of the estate, and quoad the administratrix, the judgment was a nullity; as much so as if a judgment were rendered against A. to be levied of the goods and chattels of B. Such a judgment, so levied, would be no protection to the party. So here, if the plaintiff had proceeded to levy his execution on the goods in the curator’s hands, he would have been a tortfeasor, and trespass or trover would have lain against him. Now it would be monstrous to say that the estate should be absolved because the plaintiff had a judgment, in terms indeed against the estate, but which he dared not execute.
Again, the law authorizing no action against the curator, it is impossible that the administratrix can be bound by the judgment against him, or that a scire facias on that judgment could lie against her. Now the plaintiff had a good right of action against her on the bond. That right of action might be merged by a judgment *271 against her, or by a judgment which may be brought to bear on her. But it cannot be merged by the judgment against the curator, to which she is no party or privy, and for which neither she nor her intestate’s estate can be made liable. It is then the same thing as if there had been no such judgment, and the plea therefore offers no bar to the plaintiff’s demand against the administratrix upon her intestate’s bond.
It is said, however, that there are some curators against whom tire action will lie. That is true; but the fact only develops another error in the plea. For, to make the plea a good bar, it ought to have been shewn that the curator was such an one as was liable to be sued. In this aspect also, the demurrer should have been sustained.
I am therefore of opinion to reverse the judgment, and to enter up judgment on the demurrer for the plaintiff.
Judgments in both cases reversed, and judgment entered for the defendants in the scire facias, and for the plaintiff in the action of debt.